MEMORANDUM **
Richard Lee Pirtle (“Pirtle”) appeals the denial of his 28 U.S.C. § 2254 habeas corpus petition, arguing that tainted identification evidence violated his due process rights and that he received ineffective assistance of counsel. Pirtle is currently serving a sentence of 24 years and 4 months in state prison for two counts of robbery with the personal use of a firearm in violation of California Penal Code §§ 211 and 12022.5(a)(1), two counts of assault with a semiautomatic firearm in violation of California Penal Code § 245(b)(2), and two counts of false imprisonment by violence in violation of California Penal Code § 236. As the record contains sufficient and independent evidence to sustain Pirtle’s conviction and no indication of ineffective assistance of counsel, we affirm.
I. BACKGROUND
On November 15, 1999, two individuals robbed an Advance America Check Cashing store and its two clerks at gunpoint. One, later identified as Pirtle, wore a blue bandana over his face, a dark jacket, and other dark clothing. He held a black 9-millimeter handgun. The other, later identified as co-defendant Garry A. Tor-rence (“Torrence”), wore a red nylon mask and other dark clothing and held a smaller, tarnished silver semi-automatic handgun with a black handle.
At gunpoint, employees Mitchelle Ramirez (“Ramirez”) and Danny Esparza (“Esparza”) were ordered to put up their hands. One of the robbers also said, “Give me all the money.” After Ramirez opened one cash register, one of the robbers took approximately $300. Ramirez could not open the register to her left.
Ramirez was then ordered to open the safe in the back. When she could not do so, she was forced into the bathroom and Esparza was ordered to open the safe. In the midst of failing attempts, Esparza was hit on the head and threatened with death if he did not hurry. As Esparza struggled to open the safe, he was grabbed, slammed against the wall, a hand was put on his neck and a gun was held to his head. Esparza was then thrown to the floor and again ordered to open the safe. The robbers threatened to shoot Esparza as they counted down from a minute. Eventually, Esparza opened the safe and turned over a Bank of America bag containing about $1,600.
Pursuant to one robber’s demands, Es-parza surrendered the store surveillance videotape. The robbers then went through Ramirez’s purse and Esparza’s wallet, after forcing both employees to strip down to their undergarments. Ramirez and Esparza were warned not to call the police and told to stay where they were. One robber threatened to kill them and their families.
Responding to a robbery in progress call, Pomona Police Officer Stires observed two men leaving the check-cashing store from a distance of about thirty yards. Officer Stires broadcasted their description and direction to Officer Laterreur. Officer Stires also noticed another black male in *78 the area wealing black clothing and a black hat, but these clothes did not specifically match the described clothes of the robbers.
Upon seeing Officer Stires, the two men began walking and then “trot[ting]” in the opposite direction. Officer Laterreur yelled, “Police, stop.” One of the men began running in Officer Stires’s direction, crossed Arrow Highway and ran through a gas station parking lot and to the back of a restaurant, dropping a semi-automatic handgun before complying with Officer Stires’s order to put both of his hands over his head. However, instead of complying with repeated orders to stop and go to the ground, the man started walking away while periodically glancing over his shoulder to see Officer Stires’s reaction. When the man reached for his waistband with one hand, Officer Stires, fearing that he would retrieve a weapon, shot him once with a shotgun. Identified later at the hospital as Pirtle’s co-defendant, he told a nurse, “I know what I did. I know I was wrong but you don’t need to be so mean to me.”
Officer Pickering managed to detain a second man following a chase. As the man fled through the neighborhood, he discarded his black jacket, handgun, and the money bag, but eventually he was caught after breaking into a neighborhood woman’s house in an attempt to hide. A jacket and a bank bag containing $1,690 were found in a trash can in a nearby residence. A different officer found a videotape in the driveway of a home not far from the scene. An area resident also found a black 9-millimeter handgun on a table in his backyard, while another area resident found a maroon wallet belonging to employee Es-parza.
Ramirez and Esparza both positively identified Torrence as the red masked robber from a photographic line-up, at the preliminary hearing and at trial. Ramirez and Esparza also identified Pirtle at the preliminary hearing and at trial. However, at a line-up, Ramirez and Esparza had identified someone other than Pirtle, who occupied position number one in the line. Ramirez chose number five while Esparza selected number six. After discussing the lineup with Ramirez, Esparza spoke to Detective Conley and then • surmised that the man in position number one was the second robber. Detective Conley confirmed that Pirtle was number one in the line-up.
At trial, Pirtle and Torrence relied on mistaken identity defenses. Nonetheless, a jury convicted Pirtle and Torrence of two counts of robbery with the personal use of a firearm in violation of California Penal Code §§ 211 and 12022.5(a)(1), two counts of assault with a semiautomatic firearm in violation of California Penal Code § 245(b)(2), and two counts of false imprisonment by violence in violation of California Penal Code § 236. Pirtle received a sentence of 24 years and 4 months in state prison. The California Court of Appeal affirmed his conviction, rejecting his challenge to the identification evidence and his claim of ineffective assistance.
Pirtle sought habeas relief in the district court, which was denied with prejudice. Pirtle timely appealed, arguing that tainted identification evidence violated his due process rights and that he received ineffective assistance of counsel.
II. ANALYSIS
This court reviews de novo a district court’s dismissal of a 28 U.S.C. § 2254 habeas petition. Arredondo v. Ortiz, 365 F.3d 778, 781 (9th Cir.2004). This court also reviews relevant facts for clear error. Killian v. Poole, 282 F.3d 1204, 1207 (9th Cir.2002).
*79 Pirtle first argues that the in-court identifications violated his due process rights because Detective Conley had tainted the identifications by previously confirming Pirtle’s position in the line-up. However, regardless of whether the identifications were suggestive, the record as a whole establishes that such error in identification, if any, is harmless.
Under the harmless error standard, this court must determine whether a constitutional error “had substantial and injurious effect or influence in determining the jury’s verdict.” Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted). In this case, the identifications could not have substantially and injuriously affected the verdict because the record contains sufficient and independent evidence that Pirtle robbed the store and its clerks. While being chased by the police, Pirtle left a long trail of evidence in the neighborhood of the chase, including his black jacket, handgun, the money bag, and a maroon wallet belonging to employee Esparza. This trail led right up to the doorway where Pirtle was found, sweating, minutes after the robbery.
Pirtle next argues that he received ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He contends that counsel should have restricted the victims’ testimony before trial and prevented an allegedly unreliable eyewitness identification from reaching the jury.
Strickland first requires that the legal representation fall “below an objective standard of reasonableness.” Id. at 687-88, 104 S.Ct. 2052. There is a “strong presumption that counsel ‘rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.’ ” United States v. Palomba, 31 F.3d 1456, 1460 (9th Cir.1994) (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). Second, Pirtle must establish that there is “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
However, Pirtle’s counsel reasonably relied on a mistaken identity theory, attacking the identification evidence throughout the trial. Furthermore, the outcome could not have been different for the same reason that any suggestive identifications constituted harmless error: the record contains sufficient and independent evidence that Pirtle robbed the store and its clerks. Pirtle therefore failed to meet his burden under the Strickland test for ineffective assistance of counsel.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s dismissal with prejudice of Pirtle’s 28 U.S.C. § 2254 habeas corpus petition.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.